IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH SIMPSON, on behalf of himself and | § | |
| as Personal Representative on behalf | § | |
| of the ESTATE OF JOSEPH | § | |
| DANIEL SIMPSON, III | § | |
| | § | **JUDGE:** |
| Plaintiffs | § | |
| | § | |
| VS | § | **CIVIL ACTION NO.:  11-500** |
| | § | |
| QUALITEST PHARMACEUTICALS, INC., | § | |
| ELI LILLY AND COMPANY, and XANODYNE | § | **JURY TRIAL DEMANDED** |
| PHARMACEUTICALS, INC., ENDO | § | |
| PHARMACEUTICALS, INC., VINTAGE | § | |
| PHARMACEUTICALS, LLC, PROBST | § | |
| DISTRIBUTION, INC. f/k/a QUALITEST | § | |
| PHARMACEUTICALS, INC. and | § | |
| GENERICS BIDCO I, LLC d/b/a QUALITEST | § | |
| PHARMACEUTICALS, INC. | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

PLAINTIFF JOSEPH SIMPSON on behalf of himself and on behalf of the Estate of

Joseph Daniel Simpson III, files this, his Original Complaint against Defendants, QUALITEST

PHARACEUTICALS, INC. ELI LILLY AND COMPANY, AND

XANODYNEPHARMACEUTICALS, INC., ENDO PHARMACEUTICALS, INC., VINTAGE

PHARMACEUTICALS, LLC PROBST DISTRIBUTION, INC. f/k/a QUALITEST

PHARMACEUTICALS, INC. and GENERICS BIDCO I, LLC d/b/a QUALITEST

PHARMACEUTICALS, INC. and, for causes of action, would respectfully show:

## PARTIES

1.      Plaintiff, JOSEPH SIMPSON ("Plaintiff) is an individual who is a citizen of the State of Florida and a resident of the State of Florida.  He brings this wrongful death lawsuit on his own behalf and asserts survival causes of action on behalf of the estate of his son, Joseph Daniel Simpson III ("Decedent").  Plaintiff Joseph Simpson is the personal representative of the Estate of Joseph Simpson and also brings such claims in that capacity.

2.      Defendant QUALITEST PHARMACEUTICALS, INC. is an Alabama corporation with its principal place of business located in Alabama.  Defendant QUALITEST PHARMACEUTICALS, INC. ("Qualitest") may be served with process at its principal place of business:  130 Vintage Drive, Huntsville, Alabama 35811.  Defendant Qualitest manufactured and sold the pharmaceutical drug propoxyphene to consumers, including decedent.   Upon information and belief, Defendant Qualitest has transacted and conducted business in the State of Texas and derived substantial revenue from interstate commerce resulting from contacts with the State of Texas.

3.      Defendant ELI LILLY AND COMPANY ("Eli Lilly") is an Indiana company with its principal place of business in Indiana.  Defendant ELI LILLY AND COMPANY can be served with process through its registered agent, Richard A. Armitage, Eli Lilly and Company, Lilly Corporate Center, Indianapolis, IN  46285. Defendant Eli Lilly, upon information and belief is the original patent holder for the pharmaceutical Propoxyphene and submitted the original application to the Food and Drug Administration ("FDA") for Propoxyphene's approval. Upon information and belief, Defendant Eli Lilly has transacted and conducted business in the State of Texas and derived substantial revenue from interstate commerce resulting from contacts with the State of Texas.

4.     Defendant XANODYNE PHARMACEUTICALS, INC. ("Xanodyne") is a corporation with a principal place of business in Florence, Kentucky, which conducts business in and throughout the State of Texas.  XANODYNE is principally engaged in the manufacture and sale of pharmaceuticals.  Service of process may be had upon Defendant  at it's principal place of business: 7300 Turfway Road, Suite 300, Florence, KY  41042. Upon information and belief, Defendant Xanodyne has transacted and conducted business in the State of Texas and derived substantial revenue from interstate commerce resulting from contacts with the State of Texas.

5.     Upon information and belief, at all times relevant, Defendant XANODYNE PHARMACEUTICALS, INC. was in business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Prophxyphene for use as a prescription management medication.  Upon information and belief, Defendant XANODYNE PHARMACEUTICALS, INC. is the holder of approved New Drug Application for Prophxyphene, which was recently pulled from the market for sale to the public.

6.     Defendant ENDO PHARMACEUTICALS, INC., ("Endo") is a Pennsylvania corporation with its principal place of business located at 100 Endo Boulevard, Chadds Ford, PA 19317.  Defendant ENDO acquired Defendants QUALITEST and Vintage Pharmaceuticals, LLC ("Vintage") in December 2010.  Upon information and belief this defendant does business and has committed torts in the State of Texas.  At all relevant times, Defendant  Endo's predecessors in interest were and remain in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or  distribute Prophxyphene for use as a prescription pain management medication.

7.     Defendant VINTAGE PHARMACEUTICALS, LLC, ("Vintage") is an Alabama corporation with its principal place of business located at 120 Vintage Road NE, Huntsville, AL

35811.  Upon information and belief this defendant does business and has committed torts in the State of Texas. Upon information and belief, and at all relevant times Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or distribute Prophxyphene for use as a prescription management medication. At all relevant times, Defendants or their predecessors in interest were and remain in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or distribute, Prophxyphene for use as a prescription pain management medication.  This Defendant sold and/or has sold products under the name Qualitest Pharmaceuticals, Inc.

8.      Defendant   PROBST   DISTRIBUTION,   INC.   f/k/a   QUALITEST PHARMACEUTICALS, INC. ("Probst") is an Alabama Corporation with its principal place of business located at with its principal place of business located at 130 Vintage Drive, Huntsville, Alabama.  Upon information and belief this defendant does business and has committed torts in the State of Texas.  Upon information and belief, and at all relevant times Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or distribute Prophxyphene for use as a prescription management medication. At all relevant times, Defendants or their predecessors in interest were and remain in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or  distribute, Prophxyphene for use as a prescription pain management medication.  This Defendant sold and/or has sold products under the name Qualitest Pharmaceuticals, Inc.

9.      Defendant   GENERICS   BIDCO   I,   LLC   d/b/a   QUALITEST PHARMACEUTICALS, INC.  ("Bidco") is a Limited Liability Company organized under the laws of the State of Delaware, with its principal place of business located at 130 Vintage Drive, Huntsville,  Alabama.   Upon  information  and  belief  this  defendant  does  business  and  has

committed torts in the State of Texas.  Upon information and belief, and at all relevant times Defendants were in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or distribute Prophxyphene for use as a prescription management medication. At all relevant times, Defendants or their predecessors in interest were and remain in the business of and did design, research, manufacture, test, advertise, promote, market, sell and/or  distribute, Prophxyphene for use as a prescription pain management medication. This Defendant sold and/or has sold products under the name Qualitest Pharmaceuticals, Inc.

10.     Hereinafter Defendants QUALITEST, VINTAGE, PROBST, and BIDCO will be collectively referred to as "Qualitest").

## A.

## JURISDICTION AND VENUE

11.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is between the citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because Defendants are each incorporated and have principal places of business in a states other than the state in which the named Plaintiffs reside.

12.     Furthermore, each Defendant has had consistent and continuous contacts within the State of Texas through the sale, advertising and/or distribution of their products to residents of the State of Texas.  These contacts are sufficient actions of Defendants to purposefully avail themselves of the benefits of doing business in the State of Texas.  Defendants have also committed torts within the State of Texas.  These actions constitute sufficient minimum contacts with the State of Texas to create personal jurisdiction over each Defendant.  Such jurisdiction does not offend traditional notions of fair play and substantive justice.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Western District of Texas.

## NATURE OF THE CASE

14.     This action involves the death of Decedent Joseph Daniel Simpson III, who was prescribed, and then purchased and correctly used Prophxyphene, also known generically as Propoxyphene, Napsylate, and Acetaminophen.

15.     Plaintiff brings this lawsuit because Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Prophxyphene for use as a prescription pain management medication and concealed their knowledge of Prophxyphene's defects from  Decedent, the Food and Drug Administration (hereinafter referred to as "FDA"), the public in general and/or the medical community specifically.

16.     When warning of safety and risks of Prophxyphene, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the FDA, to Plaintiffs and the public in general, that Prophxyphene had been tested and was found to be safe and/or effective for its indicated use.

17.     These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase Prophxyphene for use as a prescription pain management medication, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiff herein.

18.     Defendants negligently and improperly failed to perform sufficient tests, if any, concerning Prophxyphene's potential to cause fatal heart conditions, forcing Decedent, and his physicians, hospitals, and/or the FDA, to rely on safety information that applies to other prescription pain management medications, which does not entirely and/or necessarily apply to Prophxyphene.

19.     As a result of the defective nature of Prophxyphene, those persons who use and/or used and relied on Prophxyphene have suffered and/or are at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, mayocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

20.     Decedent herein, died of a heart attack at age twenty-six (26) as a direct result of his use of Prophxyphene.

21.     Defendant concealed its knowledge of the defects in its product from Decedent, and his physicians, hospitals, pharmacists, the FDA, and the public in general.

22.     Consequently, Plaintiff seeks compensatory damages for the death of his son as a result of his son's use of Prophxyphene, which has caused Decedent, and consequently Plaintiff, to suffer serious and dangerous side effects including heart arrhythmias, myocardial infarction, other adverse cardiovascular events and sudden death.

## PARTY PLAINTIFF

23.    On June 15, 2009 Decedent Joseph Daniel Simpson III reported to the emergency room complaining of chest pain.  He died in the emergency room of a heart attack less than an hour later.

24.    Decedent did not have a pre-existing cardiac history and had never suffered from any type of cardiac event.

25.    Defendant had been prescribed Prophxyhene and was taking the medication as prescribed in the weeks leading up to his death.  The only medication found in Decedent's blood screen performed during his autopsy was Prophxyphene, for which Decedent had a valid prescription..

26.    As a result of taking Prophxyphene as prescribed, Decedent was caused to suffer cardiovascular injuries which were a direct and proximate cause of his death.

## FACTUAL BACKGROUND

27.    At all times relevant, Defendants were and remain in the business of and did design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have recently acquired the Defendant who has designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Prophxyphene for use as a prescription pain management medication.

28.    The FDA first approved propoxyphene, the primary drug in the pharmaceuticals Darvacet and Darvon, for distribution in 1957.

29.    Propoxyphene, when taken as prescribed and intended, causes and contributes to a greatly increased risk of serious an dangerous side effects including, without limitation, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as

well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above names health consequences.  At all times relevant, Defendants affirmatively decided not to take part in full discovery research of its products because Defendants believed that it was more beneficial for it to advance products quickly though abbreviated developmental pathways in order to decrease the time and cost of bringing a new drug to market.

30.     In 2009, about ten million people in the U.S. received prescriptions for Prophxyphene-related drugs according to the FDA.

31.     Upon information and belief, Adverse Event ("AE") data maintained by the FDA indicates staggering, serious AEs, including heart arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarction, and or sudden death (collectively, "Cardiac Events")..

32.     Defendants ignored the correlation between the use of Prophxyphene and the increased risk of developing potentially fatal Cardiac Events, despite the wealth of scientific and medical evidence available.

33.     In June 2009, the European Medicines Agency ("EMEA") recommended that marketing authorizations for Prophxyphene be withdrawn across the European Union for safety concerns.

34.     Despite being petitioned by public interest groups to investigate whether Prophxyphene was linked to serious and potentially fatal Cardiac Events, Defendants refused to do so until July 2009, when Defendant Xanodyne was ordered by the FDA to conduct a safety study assessing unanswered questions about the effects of Prophxyphene on the heart.

35.     The FDA Advisory Committee voted against the continued marketing of propoxyphene products such as Propoxyphene.    Despite the Advisory Committee's recommendation, the FDA allowed Propoxyphene and other propoxyphene related drugs to remain on the market but ordered a safety study assessing unanswered questions about the effects of Propoxyphene on the heart.

36.     The results of the study ordered by the FDA indicated that even when taken at recommended doses, Prophxyphene cause significant changes to the electrical activity of the heart.   These changes can increase the risk for serious abnormal heart rhythms that have been linked to seriousCardiac Events , including sudden death.

37.     On November 19, 2010, the FDA announced that Defendant XANOCYNE PHARMACEUTICAL, INC., had agreed to halt all U.S. Marketing of Prophxyphene after it was determined that the drugs benefits were outweighed by the risks associated with its use, specifically the potential of the drug to cause serious and potentially fatalCardiac Events.

38.     The use of Prophxyphene created unique and dangerous cardiac risks compared to other prescription pain management medications.

39.     Defendants did not provide adequate warnings to doctors, the health care community and the general public about the increased risk of serious Cardiac Events that are described herein and that have been reported by the medical community.

40.     By reason of the foregoing, Decedent lost his life and Plaintiff suffered significant damages.

## CAUSES OF ACTION

## COUNT ONE

## NEGLIGENCE *PER SE*

41.     Defendants had an obligation to comply with the law in the manufacture, design and sale of Prophxyphene.

42.     Propoxyphene has been used and referred to, at all relevant times, as the so-called "reference listed drug" (or "RLD") in abbreviated NDAs (ANDAs) for generic versions of the drug, submitted under the provisions of subsection (j) of FDCA §505, 21 USC §355, and added to that section by Section 101 of the so-called Hatch-Waxman Amendments (P.L. 98-417, 98 Stat. 1585) enacted on September 24,1984.

43.     An applicant who submits an NDA per the provisions and procedures established under FDCA §505, 21 USC §355, is required to fully, truthfully and accurately disclose to the FDA, with its application, and periodically and at other times thereafter, data and information regarding the drug's chemistry, pharmacology, and other matters, including its proposed labeling. The FDA, as a condition for approval of the NDA, must be satisfied that the proposed labeling includes data and information about risks and side effects, test results for the drug, results of animal studies, results of clinical studies, and the drug's bioavailability, and other matters, adequate to enable physicians or other like foreseeable prescribers to use the drug safely.

44.     Federal law requires one who owns or holds an FDA-approved NDA or ANDA to ensure at all times that the drug's labeling is and remains accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to perodically and at other times report to the FDA data related to the safety of the drug and/or to the accuracy of the labeling.

45.     As holders of Abbreviated New Drug Applications ("ANDAs") for generic versions of the DARVOCET, the Defendants are and have been required by federal law to ensure continuously that the labeling for their propoxyphene products contained accurate information that would constitute adequate warnings, for any doctors who would read the labeling, about the drug's intended uses, including actual uses other than the drug's "indications" to the extent the ANDA applicant would have knowledge or notice of such uses; to conduct post market safety surveillance; and to review all adverse drug event information (ADE reports).

46.     Defendants were required by federal law to report in the propoxyphene product labeling significant information discovered in the course of the fulfillment of its obligations as holders of ANDAs for generic versions of a drug, as outlined above, bearing on the risk and/or prevalence of side effects caused by the drug.

47.      On information and belief, at all times relevant, Defendants affirmatively decided not to engage in active investigation of the risks of propoxyphene notwithstanding their ongoing obligations to ensure that the drug's labeling remained accurate and adequate.

48.     Upon information and belief, Defendants also violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 30, *et seq*.

49.     With respect to the prescription drug Prophxyphene, Defendants, upon information and belief, have or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but no limited to, one or more of the following violations:

a.      The prescription drug Prophxyphene is adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing,

storage, or installation is not in conformity with federal requirements.  See 21 U.S.C. § 351.

b.      The prescription drug Prophxyphene is adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for Prophxyphene and such deviations are not plainly stated on their labels.

c.      The prescription drug Prophxyphene is misbranded pursuant 21 U.S.C. § 352 because, among other things, its labeling is false or misleading.

d.      The prescription drug Prophxyphene is misbranded pursuant 21 U.S.C. § 352 because words, statement, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.      The prescription drug Prophxyphene is misbranded pursuant to 21 U.S.C. § 352 because the labeling does not bear adequate direction for use, and/or the labeling does not bear adequate warning against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f.      The prescription drug Prophxyphene is misbranded pursuant to 21 U.S.C. § 352 because it's dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g.      The prescription drug Prophxyphene does not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission in whole or in part, or incorrect specification of (a) statement of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses of which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (e) route or method or administration or application.

h.      Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i.      The prescription drug Prophxyphene is misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false or misleading.

j.      Defendants violated 21 CFR § 201.57 by failing to provide information that is important to the safe and effective use of the drug including the potential of Prophxyphene cause and the need for regular and/or consistent cardiac monitoring to ensure that a potential fatal Cardiac Event has not developed.

k.      Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug Prophxyphene.

l.      Defendants violated 21 CFR § 201.57 because the safety considerations regarding the prescription drug Prophxyphene are such that the drug should be reserved for certain situations, and the Defendant failed to state such information.

m.      The prescription drug Prophxyphene is mislabeled pursuant to 21 CFR § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

n.      The prescription drug Prophxyphene is mislabeled pursuant to 21 CFR § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o.      Defendants violated 21 CFR § 201.57 because the labeling failed to list the adverse reactions that occur with the prescription drug Prophxyphene and other drugs in the same pharmacologically active and chemically related class.

p.      Defendants violated 21 CFR § 201.57 because the possibility that a patient could developfatal Cardiac Events, while significantly more severe than the other reactions listed in the adverse reactions section, was not listed by Defendant before the other less serious adverse reactions on the labeling of the prescriptions drug Prophxyphene.

q.      The prescription drug Prophxyphene is mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r.      The prescription drug Prophxyphene violates 21 CFR § 210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

s.      The prescription drug Prophxyphene violates 21 CFR § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t.      The prescription drug Prophxyphene violates 21 CFR § 211.165 because the test methods employed by the Defendant are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

u.      The prescription drug Prophxyphene violates 21 CFR § 211.165 in that the prescription drug Prophxyphene fails to meet established standards or specifications and any other relevant quality control criteria.

v.      The prescription drug Prophxyphene violates 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drug Prophxyphene were not followed.

w.      The prescription drug Prophxyphene violates 21 CFR § 310.303 in that the prescription drug Prophxyphene is not safe and effective for its intended use.

x.      The Defendant violated 21 CFR § 310.303 because the Defendant failed to establish and maintain records and make reports related to clinical experience or

other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y.      Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to report adverse events associated with the prescription drug Prophxyphene as soon as possible or at least within 15 days of the initial receipt by the Defendant of the adverse drugs experience.

z.      Defendants violated 21 CFR §§ 310.05 and 314.80 by failing to conduct an investigation of each adverse event associated with the prescription drug Prophxyphene, and evaluating the cause of the adverse event.

aa.     Defendants violated 21 CFR §§ 310.05 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb.     Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc.     Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-da Alert report," or "15-day Alert report follow up."

dd.     Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of the prescription drug Prophxyphene or otherwise received by the Defendant from sources, foreign or domestic, including

information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee.   Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff.   Defendants violated 21 CFR § 314.80 by failing to submit a copy of published articles from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

50.   Defendants failed to meet the standard of care set by the above described safety statutes and regulations, which were intended for the benefit of individual consumers such as the Decedent, making the Defendant negligent per se.

51.   Decedent and Plaintiff were harmed as a direct and proximate result of Defendants' failure to adhere to the standard of care imposed on them.

## COUNT TWO

## PRODUCTS LIABILITY

52.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows:

53.     At all times relevant to this action, Defendants were the manufacturers and/or supplier of Prophxyphene products and/or their pharmaceutical ingredients, placing the prescription drug into the stream of commerce.

54.     Defendants had a duty to manufacture, design, formulate, produce, create, make, construct, and/or assemble a pain medication that would conform to the chemical composition, formula, or performance standards of Defendants and would not cause users to suffer unreasonable, dangerous side effects such as heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death.

55.     Defendants breached this duty to manufacture, design, formulate, produce, create, make, construct, and/or assemble a pain medication that would conform to the chemical composition, formula, or performance standards of Defendants in that Defendants knew or should have known its Prophxyphene products were defective and would cause its users to suffer severe side effects in consequence of using the Prophxyphene products.   Defendants' Prophxyphene products did not function as intended and, or in the alternative, created a high risk of unreasonable, dangerous side effects; to wit: heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death.

56.     The Prophxyphene products were expected to and did reach Decedent without substantial change in the condition in which they were manufactured and sold.

57.     Defendant's Prophxyphene products and their pharmaceutical ingredients in varying dosages were defectively manufactured at the time that they left Defendants' control.

58.     The Prophxyphene products and their pharmaceutical ingredients were unsafe for normal or reasonably anticipated use.

59.     Defendants products were unreasonably dangerous in that they were unsafe when used for the intended purpose for medical treatments.

60.     The Prophxyphene products were more dangerous than an ordinary consumer would expect, and the foreseeable risk or injuries from their administration exceeded their associated benefits.

61.     Defendants wrongfully permitted defective pharmaceuticals to be places into the stream of commerce, in the following ways:

a.     Defendants failed to exercise reasonable care in the manufacture of their Prophxyphene products and/or their pharmaceutical ingredients;

b.     Defendants failed to exercise reasonable care in the inspection of their Prophxyphene products and/or their pharmaceutical ingredients;

c.     Defendants failed to exercise reasonable care in the packaging of their Prophxyphene products and/or their pharmaceutical ingredients;

d.     Defendants failed to provide any or adequate warning about the risks and dangers associated with the use of their Prophxyphene products, as alleged herein and/or their pharmaceutical ingredients;

e.     Defendants failed to completely, accurately and in a timely fashion, disclose the adverse event reports associated with the use of their Prophxyphene products and/or their pharmaceutical ingredients;

f.     Defendants failed to recall, withdraw, and remove their Prophxyphene products and/or their pharmaceutical ingredients from the market once they knew or should have known of the risks and dangers associated with the use thereof;

g.     Defendants failed to promptly respond to data, reports, and publications describing problems associated with their Prophxyphene products and/or their pharmaceutical ingredients by conducting adequate analysis, testing, and surveillance;

h.     Defendants failed to implement pre-marketing and post-marketing measures to notify and warn Plaintiff as well as his physicians, medical providers, and other members of the medical community, of the risks and dangers associated with the use of the said Prophxyphene products and/or their pharmaceutical ingredients, and to recall the defective Prophxyphene products;

i.     Defendants failed to adequately and reasonably establish, maintain, and comport with acceptable quality control mechanisms to prevent defective products from entering the marketplace or from using unsafe ingredients;

j.     Defendants failed to comply with an conform to all applicable legal, regulatory, and administrative approval, licensing, and import requirements for the Prophxyphene products and all component parts, including, but not limited to, the API.

62.    Decedent could not, through the exercise of reasonable care, have discovered the defects or perceived the dangers posed by the drug.

63.    Disregarding continuous findings of the extent of danger posed by Prophxyphene containing products, Defendants continued to manufacture design, formulate, produce, and

create, make, construct, and/or assemble its Prophxyphene products to consumers, including Decedent.

64.     Defendants knew or should have known that consumers such as Decedent would foreseeably suffer injury, physically, psychologically, and economically as a result of Defendants' failure to exercise ordinary care.

65.     As a direct and proximate result of this defective product, Decedent lost his life and Plaintiff has been injured and incurred substantial damages, including, but not limited to, medical and hospital expenses, loss of income, physical and mental pain and suffering, loss of enjoyment of life, and other damages for which Defendants are liable.

## COUNT THREE

### INHERENTLY UNSAFE AND DESIGNED DEFECT PRODUCT

66.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges on information and belief as follows:

67.     At all times herein mentioned, Defendants manufactured, designed, formulated, produced, created, made, constructed, and/or assembled Prophxyphene products use by Decedent.

68.     Defendants' Prophxyphene products were defective in that, at the time of release of these products into the stream of commerce by Defendants, the medical benefits of the products were far outweighed by the foreseeable risks associated with the formulation of the products.

69.     Defendants' Prophxyphene products were in an unsafe, defective, and inherently dangerous condition when they were placed by Defendants into the stream of commerce.  The

dangerous condition of these products was unreasonably dangerous to its users, Decedent in particular.

70.     Defendants' Prophxyphene products were in a defective condition and unsafe, and Defendants knew, had reason to know, or should have known that these products were defective and unsafe, even when used as prescribed.

71.     The nature and magnitude of the risk of harm associates with the design and formulation of Defendants' Prophxyphene products, including, but not limited to, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, is high in light of the intended and reasonably foreseeable uses of the products.

72.     The formulation of Defendants' Prophxyphene products is more dangerous than a reasonably prudent consumer would expect when used in the intended or foreseeable manner. These products were more dangerous than Decedent expected.

73.     The benefits of Defendants' Prophxyphene products do not outweigh the risks.

74.     A practical and medically feasible alternative drug was available for Decedent that would have prevented the harm for which Decedent suffered and remedied the pain for which Decedent consumed Defendants' Prophxyphene product.

## COUNT FOUR

### FAILURE TO WARN

75.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further allege on information and belief as follows:

76.     Defendants had a duty to warn Decedent of the risks associated with consuming Defendants' Prophxyphene-containing products; namely, that these products may cause heart

arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death. Defendants knew or should have known about these risks.

77.     Defendants failed to provide adequate warnings or instruction that a drug manufacturer, exercising reasonable care, would have provided concerning these risks and other health concerns for which Decedent suffered.

78.     Defendants' Prophxyphene-containing products are defective due to inadequate post-marketing warning or instruction.

79.     By reason of the foregoing, Defendants are liable for the manufacturing, designing, formulating, producing, creating, making, constructing, and/or assembling the Prophxyphene products which are defective due to inadequate warning or instruction.

<u>COUNT FIVE</u>

**TEXAS DECEPTIVE TRADE PRACTICES ACT**

80.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

81.     Prescription drugs such as Propoxyphene are "goods," as that term is defined by the Texas Deceptive Trade Practices Act.  Decedent was a consumer within the meaning of the Act.

82.     Defendants are the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer, promoter, seller and/or otherwise released Propoxyphene into the stream of commerce.

83.     Defendants knew or should have known that the use of Propoxyphene causes serious and life threatening injuries but failed to warn the public, including Plaintiff's Decedent, of same.

84.     Defendant's false representations to Decedent constitute employment of false, misleading, or deceptive acts or practices that are specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of the DTPA, to wit:,

a.     representing that services have characteristics or quantities which they do not have;

b.     failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

85.     The conduct described above was a producing and proximate cause of damages to Plaintiff and Decedent.

86.     In violation of the Act, Defendants made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts from Plaintiff's Decedent in product packaging, labeling, medical advertising, direct-to-consumer advertising, promotional campaigns and materials, among other ways, regarding the safety and use of Propoxyphene.  Moreover, Defendants downplayed and/or understated the serious nature of the risks associated with Propoxyphene in order to increase the sales of Propoxyphene and secure a greater share of the pain relief market.

87.     Defendants' statements and omissions were undertaken with the intent that the FDA, physicians, and consumers, including the Plaintiff's Decedent, would rely on the Defendant's statements and/or omissions.

88.     Defendants knew of the growing public acceptance of the misinformation and misrepresentations regarding the safety and efficacy of Propoxyphene but remained silent

because Defendants' appetite for significant future profits far outweighed its concern for the health and safety of the Plaintiff's Decedent.

89.     Plaintiff's Decedent's physician prescribed and/or otherwise provided Decedent with Propoxyphene, and Decedent consumed Propoxyphene, primarily for personal and family reasons and suffered ascertainable losses of money as a result of the Defendant's use or employment of the methods, acts, or practices alleged herein.

90.     The aforesaid promotion and release of Propoxyphene into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale of advertisement of such merchandise or services by Defendant, in violation of Act.

91.     Defendants concealed, omitted, or minimized the dangerous effects of Propoxyphene or provided misinformation about adverse reactions, risks and potential harms from Propoxyphene and succeeded in persuading consumers to purchase and ingest Propoxyphene despite the lack of safety and the risk of adverse medical reactions.

92.     Defendants' practice of promoting and marketing Propoxyphene created and reinforced a false impression as to the safety of Propoxyphene, thereby placing consumers at risk of serious and potential lethal effects.

93.     Propoxyphene lacked appropriate warnings, and the packaging and labels used by Defendants were misleading, inaccurate, incomplete, and/or untimely.

94.     Defendants violated their post-manufacture duty to warn which arose when

Defendants knew, or with reasonable care should have known, that Propoxyphene was injurious and sometimes fatal.

95.     At the time when consumers purchased and ingested Propoxyphene, Defendants intended that others would rely upon the concealment, suppression or omission of the risks of ingesting Propoxyphene.

96.     Defendants actions in connection with manufacturing, distributing, and marketing of Propoxyphene as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the Act.

97.     Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

98.     As a direct and proximate cause of the Defendants' conduct, as set forth above, decedent Joseph Simpson died on June 16, 2009.  Thus, Defendants' conduct caused permanent injury to decedent Joseph Simpson and physical, emotional and economic injury to Plaintiff.

99.     **WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief, as the Court deems proper.  Plaintiff seeks compensation for mental anguish and economic injury for himself, which was a direct and proximate result of Defendant's tortuous conduct.  Plaintiffs further seek compensation for mental anguish, physical injury, and economic injury on behalf of the Estate of Joseph Simpson for the loss of his life. Plaintiff seeks damages for the wrongful death of Joseph Simpson.

<u>**COUNT SIX**</u>

**BREACHES OF WARRANTY**

100.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

101.    Defendants placed Propoxyphene into the stream of commerce for sale and recommended its use to physicians, the FDA and consumers without adequately warning physicians, the FDA and consumers, including the Plaintiff's Decedent, of the risks associated with the use of Propoxyphene.

102.    Defendants had a duty to exercise reasonable care in the research, development, design, testing, manufacture, inspection, labeling, distribution, marketing, promotion, sale and release of Propoxyphene, including a duty to:

a)    Ensure that the product did not cause the user unreasonably dangerous side effects;

b)    Warn of dangerous and potentially fatal side effects; and

c)    Disclose adverse material facts when making representations to physicians, the FDA and the public at large, including Plaintiff's Decedent.

103.    The goods provided were not of the quality or condition expressly warranted by the defendant's affirmations and were defective in one or more of the following respects: The product is inherently dangerous to all who use it and cannot be used in the manner intended without serious risk of physical injury to the user.

104.    In addition, defendant Defendants impliedly warranted to the public generally and specifically to the decedent Joseph Simpson that Propoxyphene was of merchantable quality and was safe and fit for the purpose intended when used under ordinary circumstances and in an ordinary manner. Defendants were merchants with respect to the product in question and the goods were not merchantable as warranted in because Propoxyphene was unreasonably dangerous without adequate warnings.   Defendants knew or had reason to know of the purposes for which plaintiff purchased the goods, the plaintiff was relying on the defendant's skill and

judgment to select and furnish suitable goods, and the goods in question were unfit for the purpose for which they were intended to be used.

105.    When Decedent's physicians(s) prescribed Propoxyphene and Decedent made the decision to use Propoxyphene, both Decedent and his physicians reasonably relied upon the Defendants and their agents to disclose known defects, risks, dangers and side effects of Propoxyphene.

106.    Decedent's physician(s), the FDA and/or Decedent had no knowledge of the falsity or incompleteness of the Defendants' statements and representations concerning Propoxyphene when Decedent's physicians prescribed and/or otherwise provided Propoxyphene and decedent purchased and used Propoxyphene as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by the Defendant.  Decedent justifiably and detrimentally relied on the warranties, and representations of Defendants in the purchase and use of Propoxyphene.

107.    Defendants were under a duty to disclose the defective and unsafe nature of Propoxyphene to physicians, the FDA, consumers and users, such as Decedent.   Defendants had sole access to material facts concerning the defects, and Defendants knew that physicians, the FDA and users, such as Decedent, could, could not have reasonably discovered such defects.

108.    By the conduct alleged, Defendants, their agents and employees expressly warranted to Decedent and Decedent's physician(s) that the products were merchantable and fit for the purpose intended.

109.    This warranty was breached because Propoxyphene was not safe and effective as a medication for pain, as Defendants had represented, and Decedent was injured.

110.    As a direct and proximate cause of the Defendants' conduct, as set forth above, Decedent Joseph Simpson died in June 16, 2009.  Thus, Defendants' conduct caused permanent injury to decedent Joseph Simpson and physical, emotional and economic injury to Plaintiff.

111.    **WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief, as the Court deems proper.  Plaintiff seeks compensation for mental anguish and economic injury for himself, which was a direct and proximate result of Defendant's tortuous conduct.  Plaintiffs further seek compensation for mental anguish, physical injury, and economic injury on behalf of the Estate of Joseph Simpson for the events leading to the loss of his life. Plaintiff seeks damages for the wrongful death of Joseph Simpson.

## <u>COURT SEVEN</u>

### WRONGFUL DEATH

112.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

113.    As a result of the acts and/or omissions of the Defendants as set forth herein, Plaintiff and the heirs of Joseph Simpson suffered serious emotional and injuries resulting from Joseph Simpson's death.

114.    Plaintiff (as Decedents' surviving relatives), are entitled to recover damages as Decedents would have if they were living, as a result of the acts and/or omissions of the Defendants as specifically  pled.

115.     Plaintiff, as personal representative of the Estate of Joseph Simpson, brings this actions on behalf of all of the beneficiaries entitled to bring this action pursuant to <u>Section 71.004 of the Texas Civil Practice and Remedies Code</u>.  Plaintiff Joseph Simpson is the only

living statutory beneficiary under the Texas Wrongful Death Act and is decedent's father.

116.    Plaintiff is entitled to recover punitive damages and damages for the pain and suffering caused to Decedents from the acts and omissions of the Defendants as specifically pled herein, including, without limitation, punitive damages.

117.    Plaintiff brings this action for the wrongful death of his son Joseph Simpson.

118.    Plaintiffs demands judgment against Defendants for the above described death including, without limitation, Decedents' pecuniary injury, together with all hospital, medical and funeral expenses as specifically provided for under the Texas Wrongful Death Act, as well as compensatory damages, treble damages, exemplary damages, attorneys' fees, interest and cost of suit, including without limitation, punitive damages as provided for under the Texas Survivor's Act, and all such other relief as the Court deems just.

119.    As a direct and proximate cause of the Defendants' conduct, as set forth above, decedent Joseph Simpson died in June 16, 2009.  Thus, Defendants' conduct caused permanent injury to decedent Joseph Simpson and physical, emotional and economic injury to Plaintiff.

120.    **WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief, as the Court deems proper.  Plaintiff seeks compensation for mental anguish and economic injury for himself, which was a direct and proximate result of Defendant's tortuous conduct.  Plaintiffs further seek compensation for mental anguish, physical injury, and economic injury on behalf of the Estate of Joseph Simpson for the loss of his life. Plaintiff seeks damages for the wrongful death of Joseph Simpson.

## COUNT EIGHT

### SURVIVAL ACTION

121.    Plaintiff repeats and incorporates by reference all other paragraphs of this

Complaint as if fully set forth herein.

122.   As a result of the actions and inactions of the Defendants, Decedent Joseph Simpson was caused to suffer before his death.

123.   Plaintiff, on behalf of the Decedents Joseph Simpson, seeks damages compensable under the Texas Survival Statute (or any successor statute) against Defendants. Plaintiff, in his own right, seeks damages compensable under the Texas Survival Statute (or any successor statute) against the Defendants.

124.   As a direct and proximate cause of the Defendants' conduct, as set forth above, Joseph Simpson died on June 16, 2011.  Thus, Defendants' conduct caused permanent injury to Joseph Simpson and physical, emotional and economic injury to Joseph Simpson.

125.   **WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief, as the Court deems proper.  Plaintiff seeks compensation for mental anguish and economic injury on behalf of the Estate of Decedent, which were a direct and proximate result of Defendant's tortuous conduct.  Plaintiffs further seek compensation for mental anguish, physical injury, and economic injury on behalf of the Estate of Joseph Simpson.

## COUNT NINE

### NEGLIGENCE

126.   Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

127.   The defendant manufacturer was negligent in failing to design the product so that any user could safely consume it without an unreasonable risk of injury occurring, and a safer alternative design existed and would have been used by a reasonable and prudent manufacturer under the same or similar circumstances.

128.    The product was placed on the market without warning the users of its dangerous effects.

129.    These acts and omissions, taken by themselves or in combination, were a proximate cause of the plaintiff's injuries and damages.

130.    Defendants were under a duty to disclose the defective and unsafe nature of its medication to physicians, the FDA, consumers and users, such as Decedent. Defendants had sole access to material facts concerning the defects, and Defendants knew that physicians, the FDA and users, such as Decedent, could not have reasonably discovered suck defects.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

a.    For an award of compensatory damages, including damages against Defendant for past and future damages, medical and hospital expenses, loss of income, loss of consortium, pain and suffering, medical monitoring and other damages according to proof at trial, but believed to be in an amount greater than $75,000.00.

b.    For an award of punitive or exemplary damages against Defendant for the wanton, willful, fraudulent, reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish and deter future similar conduct.

c.    For reasonable attorneys' fees and costs;

d.    For pre-judgment interest; and

e.    For such further and other relief the court deems just, equitable, and proper.


**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

**WILSON TROSCLAIR & LOVINS, P.L.L.C.**


/s/ Michael E. Lovins
Michael E. Lovins
State Bar No. 24032555
P.O. Box 92464
Austin, TX 78709-2464
Telephone: 512-535-1649
Facsimile: 512-519-1238


Jeremy R. Wilson (not admitted)
State Bar No. 24033548
302 N. Market St.
Suite 501
Dallas, Texas 75202
Telephone: (214) 484-1930
Facsimile: (214) 276-1475

**ATTORNEYS FOR PLAINTIFF**